UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JONATHAN THOMAS CAMPOS,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>DON BARNES, et al.,<br><br>　　　　Defendants. | Case No. SACV 21-0662-FLA (JEM)<br><br>MEMORANDUM AND ORDER DISMISSING COMPLAINT WITH LEAVE TO AMEND |

**PROCEEDINGS**

On April 8, 2021, Jonathan Thomas Campos ("Plaintiff"), proceeding pro se and in forma pauperis, filed a Complaint pursuant to 42 U.S.C. § 1983. He names Orange County Sheriff Don Barnes, Facility Commander Lisa Von Nordheim, and Watch Captain Joe Balicki as Defendants in their individual and official capacities.

For the reasons set forth below, the Court finds that the Complaint should be dismissed with leave to amend.

///
///
///
///

**PLAINTIFF'S ALLEGATIONS**

Plaintiff alleges the following:

<u>Inmate Classification</u>

On April 4, 2019, Plaintiff arrived at the Orange County Jail (the "Jail") as a pretrial detainee. (Complaint at ¶ 11.) In or about October 2019, Defendant Barnes changed the Jail inmate classification. Inmates do not have an opportunity to be heard before they are classified as protective custody ("PC") or general population ("GP") inmates. Inmates classified as PC must wear bright lime green clothing instead of the orange clothing worn by GP inmates. (Id. at ¶ 12.) On October 17, 2019, Plaintiff was reclassified as a PC inmate and forced to wear the bright lime green clothing. (Id. at ¶ 13.)

Changing the inmate classification system and forcing Plaintiff and other PC inmates to wear bright green clothing puts them "in a position of becoming targets of violence" and puts them "in the same category as a child molester, rapist or pedophile." (Id. at ¶ 14.)

As a result of his reclassification without due process, Plaintiff "has lost relationships with friends and loved ones and has been verbally attacked and threatened numerous times. Also has had inmates try to physically harm him causing Plaintiff Campos to suffer intentional infliction of emotional distress." (Id. at ¶ 15.)

<u>Inmate Visiting Privileges</u>

On or about March 15, 2020, Barnes suspended all non-contact visitation in the Jail. (Id. at ¶ 18.) Even prior to the policy change, all visits in the Jail were non-contact, and the current policy leaves inmates "without any reasonable alternative to exercise our rights to freedom of association." (Id. at ¶ 19.)

<u>Meals</u>

On or about April 7, 2020, Barnes ordered that the Jail cease serving inmates "wholesome and hot meals" and instead serve inmates sack lunches and dinners "that contained expired meat and stale bread." (Id. at ¶ 21.) The sack meals do not contain

sufficient calories and "leave[] inmates hungry and causes numerous health issues." (Id. at ¶ 22.)

Officer Barbecues

Starting in October 2020, deputies barbecue on the roof of the jail, which causes smoke and the smell of hot food to enter the air vents. This causes "inmates to choke while locked in their cells." (Id. at ¶¶ 23-25.)

Suicide of Inmate Shelton

On February 9, 2021, Plaintiff saw inmate Randy Shelton hang himself in his jail cell "as a direct result of these conditions of confinement," which caused Plaintiff "mental and emotional anguish." (Id. at ¶¶ 26-27.)

Grievance Process

Plaintiff has filed grievances regarding all of the above issues, but jail officials have claimed that Plaintiff never submitted any grievances. (Id. at ¶¶ 16, 20, 23, 28.)

Plaintiff seeks declaratory and injunctive relief and damages. (Id. at ¶ 35.)

**DISCUSSION**

**I.     PLEADING STANDARDS**

A complaint may be dismissed as a matter of law for failure to state a claim for two reasons: (1) the plaintiff fails to state a cognizable legal theory; or (2) the plaintiff has alleged insufficient facts under a cognizable legal theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). In determining whether a complaint states a claim on which relief may be granted, allegations of material fact are taken as true and construed in the light most favorable to the plaintiff. Love v. United States, 915 F.2d 1242, 1245 (9th Cir. 1988). However, "the liberal pleading standard . . . applies only to a plaintiff's factual allegations." Neitzke v. Williams, 490 U.S. 319, 330 n.9 (1989). "[A] liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled." Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

Although a complaint "does not need detailed factual allegations" to survive dismissal, a plaintiff must provide "more than mere labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (rejecting the traditional "no set of facts" standard set forth in Conley v. Gibson, 355 U.S. 41 (1957)). The complaint must contain factual allegations sufficient to rise above the "speculative level," Twombly, 550 U.S. at 555, or the merely possible or conceivable. Id. at 557, 570.

Simply put, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. A claim has facial plausibility when the complaint presents enough facts "to draw the reasonable inference that the defendant is liable." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). This standard is not a probability requirement, but "it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. A complaint that pleads facts that are merely consistent with liability stops short of the line between possibility and plausibility. Id.

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the violation was committed by a person acting under the color of state law. West v. Atkins, 487 U.S. 42, 48 (1988). Liability may be imposed on an individual defendant under § 1983 if the plaintiff can show that the defendant proximately caused the deprivation of a federally protected right. Leer v. Murphy, 844 F.2d 628, 634 (9th Cir. 1988). A person deprives another of a constitutional right within the meaning of § 1983 if he does an affirmative act, participates in another's affirmative act or omits to perform an act which he is legally required to do, that causes the deprivation of which the plaintiff complains. Id. at 633. The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation. Id. Sweeping conclusory allegations will not suffice;

4

the plaintiff must instead "set forth specific facts as to each individual defendant's" deprivation of protected rights. Id. at 634.

In a pro se civil rights case, the complaint must be construed liberally to afford plaintiff the benefit of any doubt. Karim-Panahi v. Los Angeles Police Dept, 839 F.2d 621, 623 (9th Cir. 1988). Unless it is clear that the deficiencies in a complaint cannot be cured, pro se litigants are generally entitled to a notice of a complaint's deficiencies and an opportunity to amend prior to the dismissal of an action. Id. at 623. Only if it is absolutely clear that the deficiencies cannot be cured by amendment should the complaint be dismissed without leave to amend. Id.; Weilburg v. Shapiro, 488 F.3d 1202, 1205 (9th Cir. 2007).

## II. SUPERVISORY LIABILITY UNDER SECTION 1983

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. The statute plainly requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by Plaintiff. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 692-95 (1978). The defendant's actions must be an actual and proximate cause of the plaintiff's injuries. Lemire v. Cal. Dep't of Corr. and Rehab., 726 F.3d 1062, 1074 (9th Cir. 2013). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Liability may not be imposed on supervisory personnel for the actions or omissions of their subordinates under the theory of respondeat superior. Iqbal, 556 U.S. at 676-77; Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1020-21 (9th Cir. 2010); Ewing v. City of Stockton, 588 F.3d 1218, 1235 (9th Cir. 2009); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). "A supervisor may be liable only if (1) he or she is personally involved in the constitutional deprivation, or (2) there is a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." Crowley v. Bannister, 734 F.3d 967, 977 (9th Cir. 2013) (citation and quotation marks omitted); accord Lemire v. California Dep't of Corr. and Rehab., 726 F.3d 1062, 1074-75 (9th Cir. 2013); Lacey v. Maricopa County, 693 F.3d 896, 915-16 (9th Cir. 2012) (en banc). "Under the latter theory, supervisory liability exists even without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of a constitutional violation." Crowley, 734 F.3d at 977 (citing Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989)) (internal quotation marks omitted).

Here, it is not clear which claims Plaintiff is intending to allege against which Defendants. Moreover, Plaintiff fails to allege facts sufficient to establish the individual Defendants' personal participation in the conduct alleged or that the policies are so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of a constitutional violation, as set forth more fully below.

**III.  FED. R. CIV. P. 18 AND 20**

A basic lawsuit is a single claim against a single defendant. Fed. R. Civ. P. 18(a) allows a plaintiff to add multiple claims to the lawsuit when they are against the same defendant. Fed. R. Civ. P. 20(a)(2) allows a plaintiff to join multiple defendants to a lawsuit where the right to relief arises out of the same "transaction, occurrence, or series of transactions" and "any question of law or fact common to all defendants will arise in the

action." In contrast, unrelated claims against different defendants must be brought in separate lawsuits to avoid confusion and prevent "the sort of morass [a multiple claim, multiple defendant] suit produce[s]." George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (noting unrelated claims against different defendants should be brought in different lawsuits, in part to prevent prisoners from circumventing filing-fee requirements and three-strikes rule under Prison Litigation Reform Act); Gonzalez v. Maldonado, No. 1:11-cv-01774-SAB (PC), 2013 WL 4816038, at *2 (E.D. Cal. Sept. 9, 2013).

As set forth above, Plaintiff has failed to set forth sufficient facts regarding each Defendant's personal involvement the numerous unrelated incidents that took place over the course of several months. To the extent that Plaintiff is attempting to bring unrelated claims against different defendants, those claims must be brought in separate lawsuits. If Plaintiff chooses to amend his pleadings, he must set forth only properly joined claims and must file separate lawsuits to pursue any unrelated claims.

## IV. CLASSIFICATION PROCEDURES

Plaintiff contends that Defendants violated his right to due process rights by classifying him as a PC inmate and requiring him to wear bright lime green clothing. (Complaint at ¶ 31.) The Due Process Clause itself does not confer on inmates a liberty interest in a particular classification status. See Moody v. Daggett, 429 U.S. 78, 88, n.9 (1976). The existence of a liberty interest created by state law is determined by focusing on the nature of the deprivation. Sandin v. Conner, 515 U.S. 472, 481-84 (1995). Liberty interests created by state law are generally limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 484. Sandin and its progeny identify three factors to consider in determining whether an atypical and significant hardship exists: (1) whether the conditions "mirrored those conditions imposed . . . in analogous discretionary confinement settings, namely administrative segregation and protective custody;" (2) the duration and intensity of the

conditions; and (3) whether the change in confinement would "inevitably affect the duration of [the prisoner's] sentence." Chappell v. Mandeville, 706 F.3d 1052, 1064 (9th Cir. 2013) (citation omitted) (alteration in original).

Under certain circumstances, labeling a prisoner with a particular classification may implicate a liberty interest subject to the protections of due process. Neal v. Shimoda, 131 F.3d 818, 830 (9th Cir. 1997) ("[T]he stigmatizing consequences of the attachment of the 'sex offender' label coupled with the subjection of the targeted inmate to a mandatory treatment program whose successful completion is a precondition for parole eligibility create the kind of deprivations of liberty that require procedural protections.").

Here, Plaintiff has alleged no facts that establish the existence of a liberty interest with respect to his PC classification. There is simply nothing that indicates the PC classification "impose[s] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484; see also Neal, 131 F.3d at 830; Cooper v. Garcia, 55 F. Supp. 2d 1090, 1101 (S.D. Cal. 1999); Johnson v. Gomez, No. C 95-20717 RMW, 1996 WL 107275, at *2-5 (N.D. Cal. 1996). Although it is difficult to see how Plaintiff could state a due process claim based on his classification status, he is granted leave to amend if he can truthfully allege facts demonstrating an atypical and significant hardship under the standards set forth above.

## V. VISITING POLICIES

Plaintiff alleges that the suspension of in-person visits at the Jail violates his First Amendment rights. (Complaint at ¶ 32.) Inmates retain those First Amendment rights not inconsistent with their status as prisoners or with legitimate penological objectives of the corrections system. See Pell v. Procunier, 417 U.S. 817, 822 (1974). When faced with a First Amendment challenge to a prison visitation policy, a court need not determine the scope of the asserted constitutional right if it finds that the challenged policy is reasonably related to legitimate penological interests, in which case the policy must be upheld.

Overton v. Bazzetta, 539 U.S. 126, 131-32 (2003) (applying Turner v. Safley, 482 U.S. 78, 89 (1987)). The First Amendment right to freedom of association is among the rights least compatible with incarceration. Overton, 539 U.S. at 131.

The Supreme Court has identified four factors to consider when determining the reasonableness of a prison regulation: (1) whether there is a "valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it"; (2) "whether there are alternative means of exercising the right that remain open to prison inmates"; (3) "the impact accommodation of the asserted constitutional right will have on guards and other inmates and on the allocation of prison resources generally"; and (4) the "absence of ready alternatives", or, in other words, whether the rule at issue is an "exaggerated response to prison concerns." Turner, 482 U.S. at 89-90.

Here, it is clear that there is a valid, rational connection between the Jail visitation restrictions and the legitimate governmental interest in maintaining the health and safety of inmates, Jail staff, and visitors during the COVID-19 pandemic and other government-imposed restrictions. Moreover, Plaintiff has not shown that there are no other means of contacting visitors, such as by telephone or mail. Although it appears unlikely that Plaintiff's claim can be cured, the Court will afford him the opportunity to amend.

**VI.     SACK LUNCHES AND DINNERS**

Plaintiff claims that he has been served sack lunches and dinners, which are not fresh and are nutritionally deficient. (Complaint at ¶ 33.) Because Plaintiff is a pretrial detainee and not a convicted prisoner, his claim is analyzed as a Fourteenth Amendment claim for deliberate indifference to his health and safety, and is not an Eighth Amendment claim. The test for establishing deliberate indifference under the Fourteenth Amendment is "purely objective"; there is no subjective component. Castro v. County of Los Angeles, 833 F.3d 1060, 1071 (9th Cir. 2016); see also Kingsley v. Hendrickson, 135 S. Ct. 2466, 2472-73 (2015).

The elements of a pretrial detainee's Fourteenth Amendment claim for deliberate indifference are:

> (1) The defendant made an intentional decision with respect to the conditions under which the plaintiff was confined;
>
> (2) Those conditions put the plaintiff at substantial risk of suffering serious harm;
>
> (3) The defendant did not take reasonable available measures to abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved – making the consequences of the defendant's conduct obvious; and
>
> (4) By not taking such measures, the defendant caused the plaintiff's injuries. With respect to the third element, the defendant's conduct must be objectively unreasonable, a test that will necessarily "turn[ ] on the 'facts and circumstances of each particular case.'" Kingsley, 135 S. Ct. at 2473 (quoting Graham v. Connor, 490 U.S. 386, 396, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989)); see also Restatement (Second) of Torts § 500 cmt. a (Am. Law Inst. 2016) (recognizing that "reckless disregard" may be shown by an objective standard under which an individual "is held to the realization of the aggravated risk which a reasonable [person] in his place would have, although he does not himself have it").

Castro, 833 F.3d at 1071; see also Darnell v. Pineiro, 849 F.3d 17, 35-36 (2d Cir. 2017) (concluding that "Kingsley's broad reasoning extends beyond the excessive force context in which it arose" and announcing "we join the . . . Ninth Circuit, which, . . . likewise interpreted Kingsley as standing for the proposition that deliberate indifference for due process purposes should be measured by an objective standard"). Under this test, "a pretrial detainee who asserts a due process claim" must "prove more than negligence but less than subjective intent – something akin to reckless disregard." Castro, 833 F.3d at 1071. Constitutional deprivations that are the result of mere negligence or accident are not

actionable. Kingsley, 135 S. Ct. at 2472; see also Daniels v. Williams, 474 U.S. 327, 331-32 (1986) (negligence does not translate to a due process violation even if it causes injury).

Plaintiff alleges that, under revised Jail policies, he has been served sack lunches and dinners since April 7, 2020, which contain expired meat and stale bread and do not contain adequate calories. (Complaint at ¶¶ 21-22.) Plaintiff further alleges that the lack of sufficient food "leaves inmates hungry and causes numerous health issues." (Id. at ¶ 22.) Plaintiff's allegations are conclusory and insufficient to state a Fourteenth Amendment deliberate indifference claim. If Plaintiff chooses to file an amended complaint, he must set forth specific factual allegations demonstrating how the Jail food policy put him at substantial risk of serious harm, the actual harm he suffered, and why Defendants' actions were objectively unreasonable.

## VII. DEPUTY BARBECUES

Plaintiff alleges that deputy barbecues on the roof of the Jail caused smoke to enter the facility "making it hard to breath causing inmates to choke while locked in their cells. (Complaint at ¶ 24.) As with the previous claim, Plaintiff's allegations are conclusory and he has failed to establish that Defendants' conduct constituted deliberate indifference to Plaintiff's health and safety. If Plaintiff chooses to file an amended complaint, he must set forth specific factual allegations demonstrating how the smoke from the barbecues put him at substantial risk of serious harm, the actual harm he suffered, and why Defendants' actions were objectively unreasonable.

## VIII. INMATE GRIEVANCES

Although he does not set forth these allegations as a separate claim, Plaintiff complains that he filed grievances regarding the above-described actions, but Defendants claim he never submitted any grievances. Detainees and prisoners do not have an independent constitutional due process entitlement to a specific administrative grievance procedure. Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003); Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988) (holding that there is no protected liberty interest to a

grievance procedure). Thus, it is difficult to see how Plaintiff could bring a viable claim based on the failure to more fully investigate his grievances. Plaintiff should consider the legal viability of such a claim before asserting it in an amended complaint.

## IX. EMOTIONAL DISTRESS

Plaintiff also alleges that he has suffered emotional distress when he witnessed the suicide of another inmate. (Complaint at ¶ 26.) It is unclear whether Plaintiff is attempting to assert a claim for negligent or intentional infliction of emotional distress. However, Congress has established that "[n]o Federal civil action may be brought by a prisoner confined in a . . . correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act . . . ." 42 U.S.C. § 1997e(e). Plaintiff has not alleged any facts that would support a claim for negligent or intentional infliction of emotional distress. If Plaintiff is attempting to bring a claim based on emotional distress, he should consider the legal viability of such a claim before asserting it in an amended complaint.

* * * *

Although it appears unlikely that Plaintiff can state a viable civil rights claim, it is not absolutely clear that his pleadings cannot be cured by amendment. Accordingly, the Complaint is **DISMISSED WITH LEAVE TO AMEND**.

If Plaintiff desires to pursue this action, he is **ORDERED** to file a First Amended Complaint within **thirty (30) days** of the date of this Order, which remedies the deficiencies discussed above.

If Plaintiff chooses to file a First Amended Complaint, it should: (1) bear the docket number assigned in this case; (2) be labeled "First Amended Complaint"; (3) be filled out exactly in accordance with the directions on the form; and (4) be complete in and of itself without reference to the previous complaints or any other pleading, attachment, or document. The Clerk is directed to provide Plaintiff with a blank Central District of California civil rights complaint form, which Plaintiff must fill out completely and resubmit.

**Plaintiff is admonished that, if he fails to file a First Amended Complaint by the deadline set herein, the Court may recommend that this action be dismissed for failure to prosecute and failure to comply with a Court order.**

DATED: April 21, 2021         */s/ John E. McDermott*
                                                        JOHN E. MCDERMOTT
                                               UNITED STATES MAGISTRATE JUDGE